**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANCED ORAL TECHNOLOGIES, L.L.C, <br><br> Plaintiff, <br><br> v. <br><br> NUTRES RESEARCH, INC., ET AL., <br><br> Defendants. | Civ. No. 10-5303(DRD) <br><br><br> **O P I N I O N** |

*Appearances by:*

NISSENBAUM LAW GROUP, LLC
by:  Gary D. Nissenbaum, Esq., Gavin Handwerker, Esq. and John V. Reilly, III, Esq.
2400 Morris Avenue, 3rd Fl.
Union, New Jersey 07083

    *Attorneys for Plaintiff*


McCARTER & ENGLISH, LLP
by:  Irene M. Hurtado, Esq. and Scott S. Christie, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

    *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

Plaintiff, Advanced Oral Technologies, L.L.C. ("AOT"), instituted this Lanham Act claim against Defendant, Nutrex Research, Inc. ("Nutrex"), and others, seeking to enjoin the sale of a bodybuilding supplement which incorrectly lists one of Plaintiff's patented substances among the ingredients listed on the supplement's product label. Presently before the court is Plaintiff's Motion for a Preliminary Injunction. For the reasons set forth below, Plaintiff's Motion will be denied.

## I.   BACKGROUND

Plaintiff is the exclusive licensee and sole manufacturer of a patented molecule known as 2nitrooxy ethyl2amino 3methylbutanoate (the "Molecule"), which is used in a bodybuilding supplement called eNoxide. Nutrex is the manufacturer of a different bodybuilding supplement known as "Hemo Rage Black" (sometimes referred to herein as the "Product"), which is essentially a cocktail of various supplements. Nutrex sells Hemo Rage Black through numerous retailers, including Defendants Bodybuilding.com, Inc., Vitamin Shoppe, Inc., Europa Sports Products, Inc. ("Europa"), and General Nutrition Centers, Inc. ("GNC").

When Hemo Rage Black was first introduced in August of 2009 the Product label listed 56 different ingredients, including the Molecule. The ingredients were listed on the back of the bottle in size 6.5 font. Defendants admit that Hemo Rage Black does not, and never did, actually contain the Molecule. Rather, the Product label incorrectly listed the Molecule among the ingredients.

Nutrex asserts that it originally intended to license the Molecule from Plaintiff and to include it in the Product. For one reason or another, the Molecule was not part of the final formulation, but the labels listed it among the ingredients because the labels were designed and

produced at a time when Nutrex thought the Molecule would be included in the Product.  Thus, according to Nutrex, the inaccurate labels resulted from an inadvertent failure to correct the labels after it determined the Molecule would not be part of the final formulation.

Plaintiff discovered the inaccurate labels soon after Hemo Rage Black was introduced.  It initially thought Nutrex was violating its patent for the Molecule but soon discovered that the Molecule was not actually included in the Product.  In September of 2009 Plaintiff contacted Nutrex and demanded that it stop distributing the Product with the erroneous labels.

Thereafter, the parties attempted to negotiate a license agreement whereby Nutrex would have paid a fee for use of the Molecule and the Molecule would have been included in the Product.  According to Nutrex, Plaintiff sought to receive a fee of four to five dollars per bottle of Hemo Rage Black, an amount Nutrex thought to be unreasonable.  Negotiations broke down by the end of March, 2010.

On April 1, 2010 Nutrex removed the reference to the Molecule from its website and other advertising, and had new labels printed for all future manufacturing runs.  To correct the faulty labels on existing inventory held in its warehouse, Nutrex crossed out the reference to the Molecule with a black marker.  Co-Defendants Vitamin Shoppe, GNC, Europa, and Bodybuilding.com (the "Co-Defendants") also removed all references to the Molecule in their advertising materials.  It is unclear whether the Co-Defendants attempted to cross out the reference to the Molecule on the mislabeled bottles they held in inventory.

Plaintiff asserts that it was informed by Nutrex in April of 2010 that all references to the Molecule had been removed from the Product.  However, despite Defendants' efforts to correct the faulty references to the Molecule, and despite Nutrex's assertion to Plaintiff, there are still

mislabeled bottles in the stream of commerce. In September of 2010 Plaintiff discovered that mislabeled bottles of Hemo Rage Black could be purchased from each of the Co-Defendants.

Plaintiff's principal, Michael Farber, purchased a mislabeled bottle of Hemo Rage Black on September 23, 2010 from a GNC store located in the Willowbrook Mall. On September 24, 2010 Mr. Farber purchased a bottle of the Product from a Vitamin Shoppe store in Clifton, New Jersey on which the reference to the Molecule was only partially stricken. However, on November 23, 2010 Mr. Farber purchased a bottle from the same store in Clifton on which the reference to the Molecule was blacked-out completely. On September 22, 2010 Mr. Farber purchased two bottles of the Product from a store called Muscle Maker Grill in Parsippany, New Jersey ("MMG"). He asserts that MMG received those bottles from Defendant Europa, and that the reference to the Molecule was not blacked-out. Mr. Farber further asserts that Bodybuilding.com was selling mislabeled bottles of the product until September of 2010 and that it now sells bottles on which the reference to the Molecule was stricken with a "black permanent marker which can wear off or be rubbed off or only partly covers the reference to the Molecule." (Farber Cert. ¶ 10(d).)

Plaintiff filed this action on October 14, 2010, thirteen months after first discovering references to the Molecule on bottles of Hemo Rage Black, and over seven months after its licensing negotiations with Nutrex broke down. Plaintiff seeks an Order enjoining Defendants from, among other things, marketing, promoting, advertising, distributing, selling, and/or offering to sell any product which: (i) utilizes or makes reference to the Molecule; (ii) strikes out or covers up reference to the Molecule; (ii) utilizes or makes reference to anything substantially or confusingly similar to the Molecule; (iii) engaging in any conduct that tends to confuse or mislead purchasers into thinking that Defendants are connected to or sponsored by Plaintiff; (iv)

4

otherwise competing unfairly with Plaintiff; and (v) assisting any other person from engaging in any of the above-described acts.

Additionally, Plaintiff seeks an Order requiring Defendants to: (i) recall all Hemo Rage Black products containing any reference to the Molecule, regardless of whether the reference to the Molecule has been stricken from the Product label; and (ii) take affirmative steps to dispel any false impression about the Molecule that has been created by the Defendants.

## II.     DISCUSSION

**Standard of Review**

An injunction is "an extraordinary remedy which should be granted only in limited circumstances." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). Moreover, "when the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." Punett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). "A mandatory injunction is said to alter the status quo by commanding some positive act . . . [and] should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Tom Doherty Assocs. V. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985).

To prevail on a motion for a preliminary injunction, the moving party must prove "that (1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief." Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006) (quoting Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch.

Dist., 386 F.3d 514, 524 (3d Cir. 2004)). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." Nutrasweet Co. v. Vit-Mar Enters., 176 F.3d 151, 153 (3d Cir. 1999). In this case, Plaintiff's Motion must be denied because Plaintiff has not shown that it will suffer irreparable harm if the injunction is denied.

**Irreparable Harm to the Moving Party**

Plaintiff asserts that Defendants' actions have caused, and will continue to cause, Plaintiff to suffer irreparable harm, including loss of market share, loss of control of reputation, and loss of goodwill. "The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." Adams v. Freedom Forge Corp., 204 F.3d 475, 485 (3d Cir. 2000). In Lanham Act cases irreparable harm is presumed if the challenged advertising makes a misleading comparison or reference to a competitor's product. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 129 F.Supp.2d 351, 367 (D.N.J. 2000). In contrast, where a false or misleading advertisement touting the benefits of a product is non-comparative and makes no direct reference to any competitor's product, irreparable harm is not presumed. Id.

In this case, irreparable harm cannot be presumed because the reference to the Molecule is non-comparative. Although the offensive material does contain a direct reference to the Molecule, it is not the type of direct, comparative reference that courts have found to constitute a presumption of irreparable harm because the offensive material in this case does not compare the Product and the Molecule, nor does it tout the benefits of the Product over the benefits of the Molecule. Rather, the Molecule is simply one of the 56 ingredients listed on the back of the

6

Product label in very small font. Thus, the reference to the Molecule is not enough to presume irreparable harm.

On the contrary, Plaintiff's delay in filing this action suggests that the offending conduct has not, and will not, cause irreparable harm. As the court stated in Pharmacia Corp. v. Alcon Labs., Inc., 201 F. Supp. 2d 335, 383 (D.N.J. 2002), "[s]uch a delay – one full year – knocks the bottom out of any claim of immediate and irreparable harm." Shorter delays have also been found fatal to requests for preliminary injunctions. In Warner Lambert Co. v. McCrory's Corp., 718 F. Supp. 389, 395 (D.N.J.) the court denied a preliminary injunction motion after a seven-month delay.

In the present case, Plaintiff filed its complaint thirteen months after first discovering references to the Molecule on bottles of Hemo Rage Black, and over seven months after its licensing negotiations with Nutrex broke down. Plaintiff asserts that it delayed filing this action because, for several months, it was attempting to negotiate a license agreement with Nutrex. When those negotiations failed in March of 2010, Nutrex informed Plaintiff that that it would correct all erroneous references to the Molecule. Thus, starting in April of 2010 Plaintiff presumably believed that all references to the Molecule had been removed from the Product and Defendants' marketing materials. It was not until September of 2010 that Plaintiff once again discovered erroneous labels in the marketplace.

It is unclear why it took Plaintiff six months to rediscover mislabeled bottles of the Product but the court can conceive of only two possible scenarios. Either the Plaintiff took Nutrex at its word and did not investigate whether the Product labels and marketing materials had been corrected, or Plaintiff did investigate but did not find any mislabeled materials because Defendants' efforts to correct the Product labels and marketing materials were sufficiently

7

effective that Plaintiff's investigation did not unearth any mislabeled materials. The truth of either scenario belies Plaintiff's assertion that it has suffered, and continues to suffer, irreparable harm. If the first scenario is true, Plaintiff must not have been concerned about any possible loss of market share, goodwill, or control of its reputation. If it truly thought Nutrex's misrepresentations were negatively affecting its business, Plaintiff would have investigated to determine whether Nutrex had followed through on its promise to correct the misrepresentations.[1] If the second scenario is true, it indicates that Nutrex followed through on its promise and was highly effective in correcting the misrepresentations. If that is the case, injunctive relief is unnecessary because any harm Plaintiff might suffer from the small number of mislabeled bottles that are still in the marketplace would be extremely minimal and would not justify the complete product recall Plaintiff is requesting. Regardless of which scenario is true, Plaintiff's delay in bringing this action undermines its assertion that it will suffer irreparable harm if an injunction is not issued. Thus, the court cannot grant Plaintiff's Motion.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction is denied.

    s/ Dickinson R. Debevoise
    DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: January 3, 2011

---

[1] It should be noted that such a delay has been found not to undermine a finding of irreparable harm where a plaintiff needed time to conduct an investigation to determine the effect of a violation. <u>Novartis</u> at 368. In the present case, however, there is no such allegation that Plaintiff was, between April and September of 2010, conducting a good faith investigation of the violation.