**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANCED ORAL TECHNOLOGIES, L.L.C, | |
| Plaintiff, | Civ. No. 10-5303(DRD) |
| v. | **O P I N I O N** |
| NUTRES RESEARCH, INC., ET AL., | |
| Defendants. | |

*Appearances by:*

NISSENBAUM LAW GROUP, LLC
by:   Gary D. Nissenbaum, Esq.,
       Gavin Handwerker, Esq.
2400 Morris Avenue, 3rd Fl.
Union, New Jersey 07083

   *Attorneys for Plaintiff*


McCARTER & ENGLISH, LLP
by:   Scott S. Christie, Esq.
       Irene M. Hurtado, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

   *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

Plaintiff, Advanced Oral Technologies, L.L.C. (alternatively "AOT"), instituted this suit against Defendant, Nutrex Research, Inc. ("Nutrex"), and others, seeking to enjoin the sale of a bodybuilding supplement which incorrectly lists one of Plaintiff's patented substances among the ingredients contained on the supplement's product label. Presently before the court is Defendants' Motion to Dismiss Plaintiff's Complaint in its entirety.

For the reasons set forth below, Defendants' Motion is GRANTED with respect to Count Two (RICO), Count Three (Tortious Interference), Count Five (Common Law Misappropriation), and Count Six (Accounting) of Plaintiff's Complaint. Defendants' Motion is DENIED with respect to the remaining counts.

## I. BACKGROUND

Initially Plaintiff sought a preliminary injunction. After a hearing the Court denied the application for injunctive relief. It did not address the issue of Plaintiff's likelihood of success on the merits, finding that the steps that Defendants had taken to cure the alleged violation rendered preliminary relief unnecessary. The factual account set forth below is based upon evidence presented by the parties in connection with the preliminary injunction hearing.

Plaintiff is the exclusive licensee and sole manufacturer of a patented molecule known as 2nitrooxy ethyl2amino 3methylbutanoate (the "Molecule"), which is used in a bodybuilding supplement called eNoxide. Nutrex is the manufacturer of a different bodybuilding supplement known as "Hemo Rage Black" (sometimes referred to herein as the "Product"), which is essentially a cocktail of bodybuilding supplements. Nutrex sells Hemo Rage Black through numerous retailers, including Defendants Bodybuilding.com, Inc., Vitamin Shoppe, Inc., Europa Sports Products, Inc. ("Europa"), and General Nutrition Centers, Inc. ("GNC").

When Hemo Rage Black was first introduced in August of 2009 the Product label listed 56 different ingredients, including the Molecule. The ingredients were listed on the back of the bottle in size 6.5 font. Defendants admit that Hemo Rage Black does not, and never did, actually contain the Molecule. Rather, the Product label incorrectly listed the Molecule among the ingredients.

Nutrex asserts that it originally intended to license the Molecule from Plaintiff and to include it in the Product. For one reason or another, the Molecule was not part of the final formulation, but the labels listed it among the ingredients because the labels were designed and produced at a time when Nutrex thought the Molecule would be included in the Product. Thus, according to Nutrex, the inaccurate labels resulted from an inadvertent failure to correct the labels after it determined the Molecule would not be part of the final formulation.

Plaintiff discovered the inaccurate labels soon after Hemo Rage Black was introduced. It initially thought Nutrex was violating its patent for the Molecule but soon discovered that the Molecule was not actually included in the Product. In September of 2009 Plaintiff contacted Nutrex and demanded that it stop distributing the Product with the erroneous labels.

Thereafter, the parties attempted to negotiate a license agreement whereby Nutrex would have paid a fee for use of the Molecule and the Molecule would have been included in the Product. According to Nutrex, Plaintiff sought to receive a fee of four to five dollars per bottle of Hemo Rage Black, an amount Nutrex thought to be unreasonable. Negotiations broke down by the end of March, 2010.

On April 1, 2010 Nutrex removed the reference to the Molecule from its website and other advertising, and had new labels printed for all future manufacturing runs. To correct the faulty labels on existing inventory held in its warehouse, Nutrex crossed out the reference to the

Molecule with a black marker. Co-Defendants Vitamin Shoppe, GNC, Europa, and Bodybuilding.com (the "Co-Defendants") also removed all references to the Molecule in their advertising materials. It is unclear whether the Co-Defendants attempted to cross out the reference to the Molecule on the mislabeled bottles they held in inventory.

Plaintiff asserts that it was informed by Nutrex in April of 2010 that all references to the Molecule had been removed from the Product. However, despite Defendants' efforts to correct the faulty references to the Molecule, and despite Nutrex's assertion to Plaintiff, there are still mislabeled bottles in the stream of commerce. In September of 2010 Plaintiff discovered that mislabeled bottles of Hemo Rage Black could be purchased from each of the Co-Defendants.[1]

Plaintiff filed this action on October 14, 2010, seeking both to prohibit Defendants from selling mislabeled bottles of Hemo Rage Black and to recover damages from past sales. Plaintiff pleads a "vicious blend" of business torts, including: (1) Unfair Competition under Section 43(a) of the Lanham Act; (2) Civil RICO; (3) Tortious Interference with Economic Advantage; (4) Unfair Competition and Misappropriation under N.J.S.A 56:4-1; (5) Common Law Misappropriation; and (6) Accounting.

Defendant asks this Court to dismiss the Complaint, claiming, *inter alia*, (1) that Plaintiff lacks standing to bring its state and federal unfair competition claims; (2) that Plaintiff has failed

---

[1] Plaintiff's principal, Michael Farber, purchased a mislabeled bottle of Hemo Rage Black on September 23, 2010 from a GNC store located in the Willowbrook Mall. On September 24, 2010 Mr. Farber purchased a bottle of the Product from a Vitamin Shoppe store in Clifton, New Jersey on which the reference to the Molecule was only partially stricken. However, on November 23, 2010 Mr. Farber purchased a bottle from the same store in Clifton on which the reference to the Molecule was blacked-out completely. On September 22, 2010, Mr. Farber purchased two bottles of the Product from a store called Muscle Maker Grill in Parsippany, New Jersey ("MMG"). He asserts that MMG received those bottles from Defendant Europa, and that the reference to the Molecule was not blacked-out. Mr. Farber further asserts that Bodybuilding.com was selling mislabeled bottles of the product until September of 2010 and that it now sells bottles on which the reference to the Molecule was stricken with a "black permanent marker which can wear off or be rubbed off or only partly covers the reference to the Molecule." Certification of Michael Farber in Support of Plaintiff's Motion for Injunctive Relief.

4

to allege facts sufficient to plead its RICO and Tortious Interference claims; and (3) that Plaintiff has failed to allege the necessary fiduciary relationship to support its accounting claim.

## II.   DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6) in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, the Court in Twombly held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 545. The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable

expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Evaluating the allegations of the Complaint in this light, this Court will first examine Defendants' standing objections and then turn to Plaintiffs' RICO, Tortious Interference, Misappropriation, and Accounting claims.

### B.     Constitutional Standing

Defendants first claim that Plaintiff lacks the constitutional standing to bring any of its claims. (Def. Reply Br. 1). "Constitutional standing has three elements, all of which must be met: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal nexus between that injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable judicial decision." Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 174-175 (3d Cir. 2001). Standing may not be assumed, for "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (U.S. 1992). However "[a]t the pleading stage, general factual allegations of injury

resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id.

Defendant argues that Plaintiff has "utterly fail[ed] to allege how any actions of the Defendants could have caused any harm to AOT…" (Def. Br. 1). Defendant claims that the Complaint presents only AOT's "subjective belief that it was injured" and has "failed to articulate … a casual nexus" between "the actions of Defendants and some harm to AOT" (Def. Br. 6). Defendant argues that because of this deficiency "[n]one of the three required elements for constitutional standing are present in this case." Id.

It is apparent however, that Plaintiff pleads a straightforward injury resulting from Defendants' conduct. Plaintiff alleges in its Complaint that it is "the sole and exclusive US licensee to manufacture and market supplements incorporating the Molecule" (Complaint ¶¶ 2, 15), and that it "produced and shipped in March and April 2009 the first product incorporating its Molecule in a product called 'eNoxide'" (Complaint ¶ 58). Plaintiff also claims that because of the unique properties of the Molecule, it has substantial commercial value (Complaint ¶¶ 54-57) and that "products bearing the mark 2nitrooxy ethly2amino 3methlybutanoate are widely recognized and exclusively associated by consumers with AOT's Molecule and its unique abilities." (Complaint ¶ 64).

Plaintiff further alleges that Defendant Nutrex manufactures a competing product called "Hemo Rage Black" which purports to incorporate the patented Molecule (Complaint ¶ 67), but in fact does not (Complaint ¶¶ 69, 72). Plaintiff also claims that "the sale of a product purporting to have the Molecule but not containing it would dramatically undermine consumer goodwill at a critical time in the launch of AOT's products—thus eroding AOT's year's of hard work and expenditure of resources." (Complaint ¶ 65). Plaintiff charges that "[t]he sale of Nutrex's 'Hemo

Rage Black,' with the assistance of its retail partners and co-Defendants, has damaged irreparably the reputation of AOT and eroded the goodwill it has built through the production of its high end patented and patent pending supplements." (Complaint ¶ 77).

These allegations are more than sufficient to satisfy constitutional standing requirements at this pleading stage. Plaintiff alleges that Defendant has mislabeled its product with an ingredient over which Plaintiff has exclusive legal dominion and that by doing so Defendant has undermined public confidence in the effectiveness of that ingredient and harmed Plaintiff's ability to sell its own competing product. While the damages arising from this conduct may be difficult to quantify, the alleged injury is clear, it is clearly attributable to Defendant's conduct, and a favorable judicial decision (awarding either damages or injunctive relief) will clearly remedy the situation.

Defendant repeatedly argues that Plaintiff has not presented "evidence" of its standing. See, e.g., Def. Reply Br. 2, 4. Defendant even makes the somewhat dubious argument that in the absence of such evidence "Defendants' facts must be accepted as true." Def. Reply Br. 2. However on a motion to dismiss, "a plaintiff is not required to provide evidence of or prove the truthfulness of his complaint" Eli Lilly and Co. v. Roussel Corp., 23 F.Supp.2d 460, 474-475 (D.N.J. 1998). Plaintiff's allegations, possessing enough factual detail to "nudge[] their claims across the line from conceivable to plausible" are more than sufficient. Twombly, 550 U.S. at 547.

### C. Prudential Standing

In addition to constitutional requirements, "[p]rudential considerations further limit a plaintiff's ability to establish that she has standing." Wheeler v. Travelers Ins. Co., 22 F.3d 534, 538 (3d Cir. 1994). These requirements generally require that a Plaintiff "assert his or her own

8

legal interests rather than those of third parties," that "courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances," and that a plaintiff "demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based" Id. (internal citations omitted).

Defendants do not claim that Plaintiff's complaint seeks to present the claims of third parties or "abstract questions" of any significance. Rather Defendants argue that Plaintiff's Unfair Competition claims (Counts One and Four) are barred for lack of prudential standing because they are not in the "zone of interests intended to be protected by the statute." Id. In support of this argument, Defendants' cite the holding of Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221 (3d Cir. 1998). In Conte Bros, the Court of Appeals dismissed a Lanham Act case brought by retailers of engine additives against a manufacturer of competing products.

The court in Conte Bros, after finding that there was "no constitutional [standing] obstacle to [its] consideration of this case" examined whether the retailers commercial interests were within the "zone of interests" protectable under the Lanham act. Id. at 225. To answer this question, the court adopted a five part "zone of interests" test from the antitrust context, considering:

> "(1) The nature of the plaintiff's alleged injury: Is the injury 'of a type that Congress sought to redress in providing a private remedy for violations of the... laws?"
>
> "(2) The directness or indirectness of the asserted injury."
>
> "(3) The proximity or remoteness of the party to the alleged injurious conduct."
>
> "(4) The speculativeness of the damages claim."
>
> "(5) The risk of duplicative damages or complexity in apportioning damages."

9

Id. at 233 (citations omitted). The court then held that "[a]pplying these same factors to [the retailers'] Lanham Act claim similarly weigh[ed] against judicial enforcement of this claim." Id. at 234. The court specifically noted that:

> "While the Appellants have alleged a commercial interest, they have not alleged competitive harm. Nor is there any indication that Appellants' good will or reputation have been harmed directly or indirectly… As the District Court stated, 'plaintiffs do not allege that defendants ran advertisements that said 'don't buy engine additive at Conte Brothers or Hi/Tor-instead, buy Slick 50 directly from the manufacturer.' The type of injury suffered by Appellants-loss of sales at the retail level because of alleged false advertising-does not impact the Appellants' ability to compete; nor does it detract from the Appellants' reputation or good will. Therefore, the alleged harm is not of the 'type that Congress sought to redress' by enacting the Lanham Act."

Id.

This case however, is significantly different. Here Plaintiff has alleged that it competes in the same line of business as Defendants. Specifically, Plaintiff alleges that it "has been engaged in the research, design, and manufacture of patented supplements for private label sale" (Complaint ¶ 51) and that has "produced and shipped" a fitness supplement called "eNoxide." (Complaint ¶ 58). Plaintiff further alleges that Defendant Nutrex produces and that Co-Defendants sell a competing product called "Hemo Rage Black." (Complaint ¶ 77). Plaintiff charges that by marketing and selling a product that purports to—but does not—contain its patented Molecule, Defendants have seriously impaired its ability to convince the buying public that its product is effective and "damaged irreparably the reputation of AOT and eroded the goodwill it has built through the production of its high end patented and patent pending supplements." Id.

Plaintiff's complaint alleges precisely the kind of competitive harm and reputational injury that was missing in Conte Bros. And unlike the Conte Bros plaintiffs, AOT is not a retailer and does not have the option of "respond[ing] to the artificially-increased popularity of

10

[Defendant's product] that allegedly resulted from the false advertising campaign by stocking [Defendant's product" Id. at 235. Rather it is in the position of the Conte Bros defendants' true competitors, whom the Court of Appeals noted "cannot reasonably be expected to retool their factory operations to meet the artificially-buoyed demand for [Defendant's product]." Id.

Moreover, it is clear that the Lanham Act and New Jersey Fair Trade Act are designed to prohibit a broad array of misleading representations that undermine commercial interests. See generally, American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1433 1434 (3d Cir. 1994) ("The Lanham Act has the broad purpose of protecting competitors from a wide variety of misrepresentations of products and service[s]") (internal citations omitted). Section 43(a) has been held to protect businesses from practices ranging from false claims of patent protection, to misappropriation of trade dress to misappropriation of common-law unregistered trademarks. It has consistently been used to rectify competitive harms resulting from literally false advertising. There is no reason to believe that it would not apply here, where a Plaintiff claims that its marketing, promotion, and sales effort for a specific product have been directly harmed by Defendants false representations about ingredients in a competing product.

The remaining parts of the Conte Bros Test do not weigh toward dismissal. The reputational damage complained of here is a "direct[]" and foreseeable result of Defendants' conduct, rather than an "indirect[]" or peripheral one. Conte Bros, 165 F.3d at 233. The Plaintiff is the party directly injured and does not bring "remote" claims on behalf of any other entity. Id. While the damages in this case may be difficult to assess at this stage of the litigation, they are not so "complex[]" or so "tenuous" as to mandate dismissal. Id. at 233-234. Moreover Plaintiff has sought injunctive relief, which requires neither speculative damages analysis nor apportionment.

Defendants spill a great deal of ink arguing about the materiality of the inclusion of Plaintiffs' patented Molecule on the label for their Product, complaining that "AOT has put forward no evidence that any consumers placed any significance on this ingredient, or that anyone purchased the product because of this ingredient." (Def. Br. 13-14). However Plaintiffs are not required to offer evidence in support of materiality at this stage of the litigation. Defendants cite legions of cases demonstrating that a materiality showing is necessary for a Lanham Act claim, but each and every one involved a merits determination rather than an evaluation of pleadings on a motion to dismiss.[2] Defendants cite no authority for the proposition that this Court should engage in a fact-based inquiry as to whether the inclusion of 2nitrooxy ethly2amino 3methlybutanoate was material to purchasing decisions. Indeed Defendants admit that there is a "substantial question as to whether this ingredient was material to any consumer purchasing decisions." (Def. Br. 14). Taking Defendants at their word, such a question cannot be properly resolved on a motion to dismiss.

### D.  RICO (18 U.S.C. 1962(c)-(d))

In addition to its Lanham Act claims, Plaintiff also charges a violation of RICO. The RICO statute provides that:

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys' fee."

---

[2]  See United States Healthcare v. Blue Cross of Greater Phila. 898, F.2d 914 (3d Cir. 1990) (JMOL Motion); Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F. 3d 1242 (11th Cir. 2002) (Preliminary Injunction); Osmose, Inc. v. Viance, LLC, 612 F.3d 1298 (11th Cir. 2010) (Preliminary Injunction); Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222 (3d Cir. 1990) (Preliminary Injunction); Castrol, Inc. v. Pennzoil Co., 987 F. 2d 939 (3d Cir. 1993) (Bench Trial); Safaie v. Jacuzzi Whirlpool Bath, 2008 Cal. App. Unpub. LEXIS 8864 (Cal. App. 4th Dist. Nov. 12, 2008) (Class Decertification on Merits); NBA v. Motorola, 105 F. 3d 841 (2d Cir. 1997) (Trial on Merits); Brooks v. Topps Co., 2007 U.S. Dist. LEXIS 94036 (S.D.N.Y. Dec. 21, 2007) (Summary Judgment).

18 U.S.C. § 1964(c).

In order to plead a violation of RICO, plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004). Where "the predicate acts alleged… are acts of fraud, [Plaintiff is] required to plead those allegations with particularity pursuant to Fed.R.Civ.P. 9(b)." Silverstein v. Percudani, 207 Fed.App'x. 238, 239-240 (3d Cir. 2006).

Where—as here— the predicate acts are mail and wire fraud the plaintiff must plead with particularity "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) use of the mails or interstate wire connection in furtherance of the scheme." U.S. v. Antico, 275 F.3d 261 (3d Cir. 2001).[3] Plaintiffs must also plead "the 'date, place or time' of the fraud, or [use an] 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' Lum, 361 F. 3d at 235.

In addition to the details of the predicate acts, the plaintiff must also plead "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000). To meet the injury requirement, a plaintiff must allege "a concrete financial loss and not mere injury to a valuable intangible property interest." Id. This requirement can be satisfied by "allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." Id.

---

[3] See also Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 406-407 (8th Cir. 1999) ("When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme.")

13

Damage to reputation will not suffice. Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to "business or property" within the meaning of 18 U.S.C. § 1964(c)."); see also Parker v. Learn Skills Corp., 530 F.Supp.2d 661, 678 (D.Del. 2008) ("Claimed losses to 'goodwill' and 'business reputation,' in addition to being highly speculative, are not the type of injuries compensable under RICO.").

In addition, to meet the proximate cause requirement, plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992). A mere "but for" showing will not suffice. Id. at 266.

Plaintiff's RICO claims are defective on multiple levels. As a threshold matter, Plaintiff has not adequately pled *any* predicate acts. Plaintiff has only alleged that Defendants have made "literally false claim[s]" with respect to the sales of Hemo Rage Black. (Complaint ¶ 98). Even granting Plaintiff broad leeway in pleading the "date and time" of the specific misrepresentations, Plaintiff has entirely neglected to plead either "defendant[s'] knowing and willful participation" in the alleged fraud, or that any Defendant's specific actions were taken "with the specific intent to defraud" as required by the statute. While Plaintiff alleges that "[u]pon information and belief, the aforementioned actions and conduct of the Defendants were, and continue to be, intentional, deliberate, willful and/or wanton in the disregard of and/or indifferent to the rights of AOT" (Complaint ¶ 87) this fact-free pleading is insufficient. Zavala v. Wal-Mart Stores, Inc., 393 F.Supp.2d 295, 314 (D.N.J. 2005) ("The mail and wire fraud predicates are pleaded on information and belief. As a general matter, such allegations are insufficient for purposes of Rule 9(b)."); see also Egnotovich v. Greenfield Twp. Sewer Auth.,

14

304 Fed. Appx. 94, 98 (3d Cir. 2008) ("Conclusory allegations of a pattern of racketeering activity, in this case, a fraudulent scheme, are insufficient to survive a Rule 12(b)(6) motion.").

In addition, Plaintiff has not alleged a concrete "injury to business or property" within the scope of 18 U.S.C. 1964(c). Plaintiff's Complaint makes no mention of out-of-pocket losses attributable to Defendants conduct. Plaintiff alleges specific harms to consumer goodwill (Complaint ¶ 65), and its business reputation (Complaint ¶ 77), but apart from formula recitation of the elements of a RICO injury (Complaint ¶ 103) and the possibility of lost sales (Complaint ¶ 108) Plaintiff alleges no injury to business or property that could form the basis of a civil RICO claim. Allegations of damage to such "intangible property interest[s]" are insufficient as a matter of law. Maio v. Aetna, Inc., 221 F.3d at 483.

Having found that Plaintiff's complaint alleges neither predicate acts, nor RICO injury, this Court need not address whether Plaintiff's threadbare accusations of "enterprise" or "conspiracy" satisfy the minimum requirements of the statute. Plaintiff's RICO count is DISMISSED. If Plaintiff elects to amend its Complaint to revivify its RICO claims, it must simultaneously file a RICO case statement as described in Local Rule 16.1(b)(4) and set forth in Appendix O to the same.

### E. Tortious Interference

To state a claim for tortious interference, a plaintiff must allege that "(1) it had a continuing or prospective economic relationship, or a reasonable expectation of economic advantage; (2) the defendant knew of such relationship or expectancy; (3) the interference and harm inflicted were done intentionally and with malice; (4) if not for the interference, it was reasonably probable that plaintiff would have realized its economic advantage; and (5) the plaintiff was injured as a result of the defendant's conduct." Printing Mart-Morristown v. Sharp

15

Electronics Corp., 116 N.J. 739, 751 (N.J. 1989). Malice here "'is not used in the literal sense requiring ill will toward the plaintiff.' Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." Id. quoting Restatement (Second) of Torts Chapter 37 at 5 (introductory note) (1979).

A plaintiff seeking damages for tortious interference may not merely suggest the possibility of lost business. Rather it "must allege facts that show an existing or prospective economic or contractual relationship" for a "mere allegation of lost business does not suffice." Eli Lilly and Co. v. Roussel Corp., 23 F.Supp.2d 460, 494 (D.N.J. 1998). Nor does the "claimed loss of … unknown customers… standing alone, state a claim for tortious interference with prospective business relations" Id. quoting Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., 801 F.Supp. 1450, 1459 (E.D.Pa. 1992).

Again, Plaintiff's claims fail on several levels. First, Plaintiff has failed to plead that Defendants acted knowingly and with malice when they included its patented product in the labels for Hemo Rage Black. While Plaintiff makes the summary allegation that Defendants "have knowingly, deliberately and intentionally engaged in a campaign of widespread fraud and deception" (Complaint ¶ 4), it pleads no facts that would suggest a deliberate campaign by any of the Defendants to undermine AOT's business. Indeed, Plaintiff admits that when confronted with the mistaken label, Defendant Nutrex volunteered to "strike out" the offending reference with a black magic marker (Complaint ¶ 7). While this may or may not have sufficed to undo any damage done to Plaintiff's business or marketing efforts for the Molecule, it hardly suggests deliberate efforts by Defendants to undermine Plaintiff's ability to sell its products.

Second, Plaintiff categorically fails to sufficiently plead that it lost sales or business because of interference from Defendants. The only mention of lost business in the Complaint is in paragraph 108, which states, in full:

> "As a result of Defendants' interference with AOT's present and prospective economic advantage, AOT has lost and will continue to lose substantial business from existing and prospective customers"

While some courts have held that a Plaintiff need not name the specific customers lost due to tortious interference,[4] this summary pleading fails to allege sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949. Even on a motion to dismiss, this "formulaic recitation of the elements of a cause of action will not do." Id. quoting Twombly, 550 U.S. at 555. Plaintiff's tortious interference count is DISMISSED.

### F. Misappropriation

Plaintiff's misappropriation claim also embraces formulaic element pleading. Plaintiff claims "[b]ased on the aforementioned" paragraphs of its Complaint, that Defendants' conduct "constitutes misappropriation by Defendants for their own benefit and use of the valuable goodwill, reputation, and business property of AOT, in violation of the common law of New Jersey." (Complaint ¶ 115). Plaintiff fails to allege which property interest has been misappropriated, which Defendant misappropriated it, or how Defendants have benefitted from its valuable goodwill and reputation. For this count, Plaintiff fails to plead even "a 'short and plain' statement of a claim or defense, the purpose of which is to place the opposition on notice

---

[4] See Teva Pharmaceutical Industries, Ltd. v. Apotex, Inc., No. 07-5514, 2008 WL 3413862, *9 (D.N.J. Aug. 8 2008); Floorgraphics Inc., v. News America Marketing In-Store Services, Inc., No. 04-3500, 2006 WL 2846268, *6 (D.N.J. Sept. 29, 2006); Syncsort Inc. v. Innovative Routines Int'l, Inc., No. 04-3623, 2005 WL 1076043, *12 (D.N.J. May 6, 2005). This Court notes that each of these cases involved allegations with substantially more factual detail than those presented here.

17

of the misconduct charged…" Eurand, Inc. v. Mylan Pharmaceuticals, Inc., 266 F.R.D. 79, 83 (D. Del. 2010) quoting Fed. R. Civ. P. 8(a). Plaintiff's misappropriation claim is DISMISSED.

### G. Accounting

Since Plaintiff's accounting claim is derivative of its claim for lost profits on the basis of tortious interference, (Pl. Br. 26) this count is also DISMISSED.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion is GRANTED with respect to Count Two (RICO), Count Three (Tortious Interference), Count Five (Common Law Misappropriation), and Count Six (Accounting) of Plaintiff's Complaint. Defendants' Motion is DENIED with respect to the remaining counts. Plaintiff will be granted leave to within thirty days file a motion for leave to file an amended complaint asserting the claims of Counts Two, Three, Five, and Six, provided that if Plaintiff seeks to reassert the RICO claims, the motion shall be accompanied by a RICO case statement.

                                        s/ Dickinson R. Debevoise
                                        DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: January 20th, 2011