<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADVANCED ORAL TECHNOLOGIES, L.L.C, <br><br> Plaintiff, <br><br> v. <br><br> NUTREX RESEARCH, INC., ET AL., <br><br> Defendants. | Civ. No. 10-5303(DRD) <br><br><br> **O P I N I O N** |

*Appearances by:*

NISSENBAUM LAW GROUP, LLC
by:     Gary D. Nissenbaum, Esq.,
          Gavin Handwerker, Esq.
2400 Morris Avenue, 3rd Fl.
Union, New Jersey 07083

          *Attorneys for Plaintiff*


McCARTER & ENGLISH, LLP
by:     Scott S. Christie, Esq.
          Irene M. Hurtado, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

          *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

Plaintiff, Advanced Oral Technologies, L.L.C. (alternatively "AOT"), instituted this suit against Defendant, Nutrex Research, Inc. ("Nutrex"), and others, seeking to enjoin the sale of a bodybuilding supplement that incorrectly lists one of Plaintiff's patented substances among its ingredients. In an opinion dated January 20, 2011, this Court dismissed four of the six counts of Plaintiff's complaint—those seeking damages and injunctive relief for tortious interference, misappropriation, accounting, and civil RICO. Presently before the court is Plaintiff's motion to amend its complaint and revive the failed causes of action.

For the reasons set forth below, Plaintiff's Motion is DENIED.

## I.      BACKGROUND

The factual account that follows is based upon evidence presented by the parties in connection with a preliminary injunction hearing.[1] Plaintiff is the exclusive licensee and sole manufacturer of a patented molecule known as 2nitrooxy ethyl2amino 3methylbutanoate (the "Molecule"), which is used in a bodybuilding supplement called eNoxide. Nutrex is the manufacturer of a different bodybuilding supplement known as "Hemo Rage Black" (sometimes referred to herein as the "Product"), which is essentially a cocktail of dozens of other bodybuilding supplements. Nutrex sells Hemo Rage Black through various retailers, including Defendants Bodybuilding.com, Inc., Vitamin Shoppe, Inc., Europa Sports Products, Inc. ("Europa"), and General Nutrition Centers, Inc. ("GNC").

When first introduced in August of 2009, the Product label listed 56 different ingredients, including the Molecule. The ingredients were listed on the back of the bottle in size 6.5 font.

---

[1]      In an order dated January 3, 2011, the Court denied an application by Plaintiff for preliminary injunctive relief without addressing the issue of Plaintiff's likelihood of success on the merits. (Doc. No. 36).

Defendants admit that Hemo Rage Black does not, and never did, actually contain the Molecule. Rather, the Product label incorrectly listed the Molecule among the ingredients.[2]

Plaintiff discovered the inaccurate labels soon after Hemo Rage Black was introduced. It initially thought Nutrex was violating its patent for the Molecule but soon discovered that the Molecule was not actually included in the Product. In September of 2009, Plaintiff contacted Nutrex and demanded that it stop distributing the Product with the erroneous labels. The parties attempted to negotiate a license agreement under which Nutrex would have paid a fee for use of the Molecule and the Molecule would have been included in the Product. However negotiations broke down by the end of March 2010.

On April 1, 2010, Nutrex removed the reference to the Molecule from its website and other advertising and had new labels printed for all future manufacturing runs. To correct the faulty labels on existing inventory held in its warehouse, Nutrex crossed out the reference to the Molecule with a black marker. Co-Defendants Vitamin Shoppe, GNC, Europa, and Bodybuilding.com (the "Co-Defendants") also removed all references to the Molecule in their advertising materials. It is unclear whether the Co-Defendants attempted to cross out the reference to the Molecule on the mislabeled bottles they held in inventory.

Plaintiff asserts that it was informed by Nutrex in April of 2010 that all references to the Molecule had been removed from the Product. Nevertheless it appears that there are still mislabeled bottles available for sale. In September of 2010 Plaintiff discovered that mislabeled bottles of Hemo Rage Black could be purchased from each of the Co-Defendants.

---

[2]     Nutrex claims that it originally intended to license the Molecule from Plaintiff and to include it in the Product. For one reason or another, the Molecule was not part of the final formulation, but the labels listed it among the ingredients because the labels were designed and produced at a time when Nutrex thought the Molecule would be included in the Product. Thus, according to Nutrex, the inaccurate labels resulted from an inadvertent failure to correct the labels after it determined the Molecule would not be part of the final formulation.

Plaintiff filed this action on October 14, 2010, seeking to prohibit Defendants from selling mislabeled bottles of Hemo Rage Black and to recover damages from past sales. Plaintiff's original complaint pled numerous causes of action, including: (1) Unfair Competition under Section 43(a) of the Lanham Act; (2) Civil RICO; (3) Tortious Interference with Economic Advantage; (4) Unfair Competition and Misappropriation under N.J.S.A 56:4-1; (5) Common Law Misappropriation; and (6) Accounting.

In an order dated January 20, 2011, the Court dismissed Counts Two (Civil RICO), Three (Tortious Interference), Five (Common Law Misappropriation), and Six (Accounting) of Plaintiff's complaint for failure to adequately plead a cause of action. By order of the same date, Plaintiff was given permission to file a motion to amend. Plaintiff now asks this Court for leave to revive its tortuous interference, misappropriation, and accounting claims through amendment.[3]

## II.    DISCUSSION

### A.    Standard of Review

Under the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision as to whether leave to amend a complaint should be granted "is a matter committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). The Third Circuit has adopted a particularly liberal approach in favor of permitting pleading amendments so as to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). Indeed, where a complaint is dismissed on

---

[3]    Plaintiff has not attempted to replead Civil RICO. (Amended Complaint ¶¶ 126-138).

Rule 12(b)(6) grounds "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

However, leave to amend a pleading may be denied if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of the amendment. Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). With regard to whether a motion to amend a complaint should be denied on futility grounds, a court must consider whether "the complaint, as amended, would…survive a motion to dismiss for failure to state a claim." Keller v. Schering-Plough, Corp., No. 04-669, 2007 U.S. Dist. LEXIS 75318, at *7 (D.N.J. Oct. 9. 2007) (citing In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002)).

The Supreme Court recently clarified the standard for a motion to dismiss for failure to state a claim in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, the Court in Twombly held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 545. The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

This Court will examine the proposed modifications to Plaintiff's complaint and determine whether they sufficiently bolster Plaintiff's allegations as to render amendment non-futile.

**B.       Tortious Interference**

To state a claim for tortious interference, a plaintiff must allege that "(1) it had a continuing or prospective economic relationship, or a reasonable expectation of economic advantage; (2) the defendant knew of such relationship or expectancy; (3) the interference and harm inflicted were done intentionally and with malice; (4) if not for the interference, it was reasonably probable that plaintiff would have realized its economic advantage; and (5) the plaintiff was injured as a result of the defendant's conduct." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (N.J. 1989). Malice here "'is not used in the literal sense requiring ill will toward the plaintiff.' Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." Id. quoting Restatement (Second) of Torts Chapter 37 at 5 (introductory note) (1979).

6

To sustain a claim of tortious interference, a plaintiff must do more than assert that it lost business. Rather it "must allege facts that show an existing or prospective economic or contractual relationship" for a "mere allegation of lost business does not suffice." Eli Lilly and Co. v. Roussel Corp., 23 F.Supp.2d 460, 494 (D.N.J. 1998). Nor does the "claimed loss of … unknown customers… standing alone, state a claim for tortious interference with prospective business relations" Id. quoting Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., 801 F.Supp. 1450, 1459 (E.D. Pa. 1992).

Even with the revisions, Plaintiff's proposed amended complaint fails to plead facts supporting a tortious interference claim. One remaining flaw concerns the alleged lost business. Plaintiff still fails to identify any customers or potential customers that it lost because of Defendants' conduct. It is well settled law that generalized claims of "lost business" will not support a tortuous interference action. See Eli Lilly, 23 F. Supp. 2d at 494. While some courts have held that a plaintiff need not name the specific customers lost due to tortious interference,[4] Plaintiff "must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers." Novartis Pharmaceuticals Corp. v. Bausch & Lomb, Inc., No. 07-5945, 2008 WL 4911868, *7 (D.N.J. Nov. 13, 2008).

In addition, Plaintiff pleads no facts supporting its allegation that Defendants acted intentionally when they included its patented product in the labels for Hemo Rage Black. Despite clear efforts to pad the document with dozens of paragraphs stating that Defendants "should have

---

[4]    See Teva Pharmaceutical Industries, Ltd. v. Apotex, Inc., No. 07-5514, 2008 WL 3413862, *9 (D.N.J. Aug. 8 2008); Floorgraphics Inc., v. News America Marketing In-Store Services, Inc., No. 04-3500, 2006 WL 2846268, *6 (D.N.J. Sept. 29, 2006); Syncsort Inc. v. Innovative Routines Int'l, Inc., No. 04-3623, 2005 WL 1076043, *12 (D.N.J. May 6, 2005). Despite Plaintiff's second bite at the apple, each case still involved allegations with substantially more factual detail than those presented here.

7

known"[5] about Plaintiff's exclusive rights to the Molecule, Plaintiff includes no facts suggesting that Defendants actually knew about the improper labeling. Indeed, Plaintiff admits as much through its use of the formulation "knew or should have known" throughout the complaint.[6] This phrasing, together with the telling absence of specific facts, demonstrates that Plaintiff has no reason to believe that Defendants deliberately included the Molecule on the label of Hemo Rage Black. Nor does the record support such an inference. Plaintiff admits that when confronted with the mistaken label, Defendant Nutrex volunteered to "strike out" the offending reference with a black magic marker (Complaint ¶ 7). While this corrective effort may have proven insufficient, it hardly speaks to a conspiracy by Defendants to undermine Plaintiff's ability to sell its product.

Since Plaintiff's revisions would still fail to survive a motion to dismiss, amendment to add a tortious interference claim would be futile.

## C.    Misappropriation

Plaintiff's misappropriation claim is also little improved. In the proposed amended complaint, Plaintiff alleges nine rights that Defendants have allegedly misappropriated for their own use:

1.    The right to make the Molecule (Amended Complaint ¶ 199);
2.    The right to market the Molecule (Id.);
3.    The right to promote the Molecule (Id.);
4.    The right to advertise the Molecule (Id.);

---

[5]    See, e.g., Amended Complaint ¶¶ 93, 94, 96, 97, 98, 100, 110, 111, 112, 148, 149, 150, 151, 152, 154, 163, 164, 165, 177, 178, 179, 180, 181, 182, 183.

[6]    In addition, many of Plaintiff's new paragraphs contain unsubstantiated charges made upon "information and belief." Allegations made upon information and belief—which are little more than conjecture and wishful thinking—have little hope of salvaging an otherwise defective complaint. See e.g., Harman v. Unisys Corp., 356 Fed. Appx. 638, 640-641 (4th Cir. 2009) ("conclusory allegations" made upon "information and belief" were "insufficient to defeat a motion to dismiss."); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1268 (11th Cir. 2009) (dismissing complaint where "allegations of conspiracy are 'based on information and belief,' and fail to provide any factual content that allows us 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.') (citation omitted).

5. The right to distribute the Molecule (<u>Id</u>.);
6. The right to sell the Molecule (<u>Id</u>.);
7. The right to claim the Molecule as a "proprietary" ingredient (<u>Id</u>. ¶ 200);
8. The right to "espouse the benefits of the Molecule to consumers" (<u>Id</u>. ¶ 201);
9. The right to instruct consumers how to ingest the Molecule correctly in order to achieve maximum effectiveness (<u>Id</u>.¶ 202).

There are serious conceptual problems with each of these claims. As an initial matter, Plaintiff admits that Hemo Rage Black has never contained the patented Molecule. (Amended Complaint ¶ 73). As such, there is no credible allegation that any Defendant ever made (#1), distributed (#5), or sold (#6) the Molecule. Consequently, Plaintiff cannot receive damages for misappropriation of these rights.

Furthermore, Plaintiff does not allege a legal basis for its exclusive ownership of the rights to market (#2), promote (#3), or advertise (#4) the Molecule. As alleged, Plaintiff's rights over the Molecule flow entirely from its patent. (Complaint ¶ 2). Plaintiff has no trademark, trade secret, or other intellectual property rights to the name of the Molecule or the written description of its properties. Ownership of a patent does not vest the owner with the right to control all information about the invention. <u>McElmurry v. Arkansas Power & Light Co.</u>, 995 F.2d 1576, 1583 (Fed. Cir. 1993) (mere dissemination of information about patent not actionable).[7] This is common sense. If Defendants wish to disseminate truthful information about the Molecule through advertisement or otherwise, they are obviously free to do so. If Defendants falsely claim that the Molecule is contained in their products, any remedy must sound in fraud or unfair

---

[7] <u>See</u> <u>also</u> <u>WiAV Solutions LLC v. Motorola, Inc.</u>, 631 F.3d 1257, 1264 (Fed. Cir. 2010) (Under the Patent Act, a patent grants the patentee the right to exclude others from making, using, selling, or offering to sell a patented invention within the United States, as well as the right to exclude others from importing a patented invention into the United States.") <u>quoting</u> 35 U.S.C. § 271(a) (Patent Act)

competition, not in the misappropriation or conversion of a property interest.[8] Any fault with such statements lies in the false claims and their impacts, not in the infringement of some abstract right to control all discussion.

The final "rights" claimed by Plaintiff are even less cognizable. Plaintiff claims exclusive ownership over the right to claim the Molecule as a proprietary ingredient (#7), to espouse the benefits of the Molecule to consumers (#8), and to instruct consumers how to ingest the Molecule correctly in order to achieve maximum effectiveness (#9). As stated above, Plaintiff has no legal monopoly over distribution of information about its alleged breakthrough. Moreover, it is unclear from the Complaint that any Defendant actually claimed the Molecule as a propriety ingredient; the allegation made is that Hemo Rage Black contains a "proprietary blend" of ingredients, not that any individual ingredient is proprietary. (Amended Complaint ¶ 68). In any event, Plaintiff has no exclusive claim over any of these "rights."

Plaintiff has failed to allege any property interest that has been misappropriated by Defendants. Since Plaintiff's revisions would be subject to dismissal under Rule 12(b), any amendment to restore a misappropriation claim would be futile.

### D.     Accounting

Since Plaintiff's accounting claim is derivative of its claim for lost profits on the basis of tortious interference, amending this count would also be futile.

---

[8]     See Van Kannell Revolving Door Co. v. Revolving Door & Fixture Co., 293 F. 261, 262 (S.D.N.Y. 1920) ("If, therefore, any one says to a possible customer of a patentee, 'I will make the article myself; don't buy of the patentee,' while he may be doing the patentee a wrong, and while equity will forbid his carrying out his promise, the promise itself is not part of the conduct which the patent forbids; it is not a 'subtraction' from the monopoly. If it injures the plaintiff, though never performed, perhaps it is a wrong, like a slander upon his title; but certainly it is not an infringement of the patent.").

### III.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion is DENIED.


s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 21, 2011